The purpose of the bill is to restore to complainant the legal title to three several properties which she conveyed to the Equitable Estates Corporation, June 22d 1920.
I think it clear that on that date these properties were owned by complainant and not by her son, who now claims that he then owned them. For many years they had maintained strong and mutual affections as mother and son with *Page 26 
little if any care to measure or perpetuate obligations arising from their financial transactions. Their mutual purpose and expectation appears to have been that the mother should own and enjoy the properties so long as she lived, and that they should then pass to her son as her heir. I am unable to believe that financial aid extended by the son to his mother was with a purpose to acquire any legal or equitable estate in any of the properties.
Defendant Equitable Estates Corporation was formed to take title to these properties, and upon the conveyances being made by complainant to that corporation on the date named its stock, except what is known as qualifying shares, was issued in the name of the mother and son in this manner: "Charles C. Spear and Helen C. Douglass, jointly, with full right of survivorship." No question has been raised touching the power of a corporation to issue its stock in this manner or touching the estate thereby created in the two persons to whom the stock was issued; but the practical effect was soon discerned by complainant when it was found that she could no longer control the property without the co-operation of her son.
Complainant is a woman who enjoys a high degree of intelligence, and her memory and mental powers at this time appear to be but little impaired. But it is as clear as the obvious can be made clear that to an extreme and unfortunate degree she possesses a tendency to place implicit confidence in those whom for the moment she trusts; throughout the long series of transactions disclosed in this case this has been clearly manifest. Pending this suit against her son, and on the eve of the day it was first set for trial, a short period of personal contact of complainant with her son induced her to seek its dismissal in his behalf and to join with her son in hostility against her husband; and shortly thereafter, pending a refusal of this court to dismiss the suit without investigation as to whether it was complainant's voluntary act, a short period of contact of complainant with her husband lead her to renew her trust in him and to again press her claims against her son. *Page 27 
It is difficult to ascertain exactly what transpired when these three conveyances were executed by complainant to the Equitable Estates Corporation, but I think it can be stated with reasonable certainty that their execution represents more nearly the purpose and will of complainant's son than her purpose or will, and does not in any substantial sense represent her voluntary or intelligent acts. I am satisfied that she was not advised and did not know or understand, and was given no reason to believe that the transaction was irrevocably placing beyond her control or beyond her right of absolute enjoyment all the property which she owned and which she had so long enjoyed; whereas, in its operative effect, the transaction strips her of all right of control or present enjoyment except as her son shall dictate through his control of the board of trustees of the corporation. The extent to which her right of enjoyment is lost is best seen by the conveyance which the son thereafter caused the corporation to make with a purpose to put the title in others; that conveyance, however, was ineffective to accomplish its purpose by reason of the lis pendens filed herein. The conveyances here in question properly may be classed as conveyances of all of complainant's property made without consideration and without independent advice and without adequate knowledge of their operative force and effect, which conveyances substantially inured to the benefit of complainant's son and which were procured by the son through the exercise of his influence over his mother, which influence was made possible by reason of her extreme confidence in him. Complainant should be relieved from their operation. Any suggestion that defendant corporation, as such, was the recipient of the legal title under the conveyances, and is immune from attack because it did not participate in their improper procurement, is untenable. In the circumstances disclosed by the evidence in effect the corporation may be said to have been a mere recipient of the legal title for the benefit of complainant and defendant to whom the stock was to be issued under the plan devised by the complainant's son. *Page 28 
Under date of November 2d 1917, a paper which has been referred to as a declaration of trust appears to have been signed by complainant, in which she declares that all the three properties here in controversy belonged to her son. I am convinced that it was neither a fact nor the understanding of either complainant or her son at that time or at any other time that these properties were owned by the son. At that time complainant's then husband had long been absent and complainant feared he might be alive. To say the least, complainant's son did not discourage that fear on his mother's part. The protection of these properties from any such claim had long been complainant's aim, and various plans had been devised for that purpose. This was one of them. I am convinced that in the circumstances disclosed by the evidence touching the execution of this so-called declaration of trust it cannot be accepted as substantial evidence of the ownership by the son of the properties in controversy. Indeed, the instrument which complainant signed contemplated her enjoyment of rights practically co-extensive with a fee. These rights are now denied to her if the conveyances to the Equitable Estates Corporation stand. I am unable to believe that either the conveyances to the Equitable Estates Corporation or the assignment of a contract which was made at the same time or the declaration of trust executed prior thereto represent voluntary acts or deeds of complainant.
To set aside instruments which appear to have been executed with all the formalities required by law, clear evidence of their infirmity should be required; the evidence in this case fully convinces me of the facts which are made the basis of this decision.
A decree will be advised pursuant to the conclusions here stated. *Page 29